U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

ENTERED
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**United States Bankruptcy Judge**

**Signed May 11, 2012**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BUCHANAN LAND & CATTLE, INC., | § | CASE NO. 10-50299-RLJ-7 |
| | § | |
| DEBTOR | § | |

### MEMORANDUM OPINION AND ORDER

The Court considers the request of First United Bank, Littlefield Branch ("United") under section 506(b) of the Bankruptcy Code that the chapter 7 trustee, Max Tarbox ("the Trustee" or "Tarbox"), remit to United the proceeds of seven checks issued by the United States Department of Agriculture ("USDA") in the total amount of $14,618. The Trustee opposes the request, contending United has no enforceable interest in the funds. The parties submitted the matter to the Court on stipulated facts and documents.

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2). The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.

Upon consideration of the stipulated facts and the exhibits received by the Court, Exhibits 1-13, the Court concludes that United is entitled to the proceeds, less the Trustee's commission and reasonable fees and expenses attributable to the Trustee's services as an attorney regarding the funds.

**Facts**

The debtor, Buchanan Land & Cattle, Inc. ("Buchanan" or "Debtor"), was an agriculture/ranching corporation. Part of Buchanan's revenue came from entitlement checks received from the USDA. United entered into three separate security agreements with the Debtor, two on June 2, 2009 and one on June 25, 2009, under which United was granted secured interest in, among other things, Buchanan's USDA entitlement interests.

The Debtor defaulted on payments to United and declared bankruptcy under chapter 12 on June 25, 2010. Walter O'Cheskey ("O'Cheskey") served as the Standing Chapter 12 Trustee for Debtor's case.

The USDA issued seven checks to United, totaling $14,618, which United received on November, 23, 2010. These checks were entitlement checks from Debtor's crop operations but were made payable to United as lienholder.

United sent the checks to O'Cheskey. United then filed a secured claim in Buchanan's chapter 12 case on December 15, 2010, for $319,469.42. Through a series of payments made to United, from late January 2011 through early March 2011, United's secured claim was paid in full. These payments straddled the conversion of this case to a chapter 7 liquidation case on February 9, 2011. Tarbox served as the chapter 7 Trustee. On February 18, 2010, Tarbox sent his letter to O'Cheskey requesting that O'Cheskey send the checks to him as estate funds. *See* Exhibit

10. O'Cheskey sent the seven USDA checks, which had not been cashed, to Tarbox on February 23, 2011.

After receiving the checks, Tarbox, intending to deposit the checks for the benefit of the estate, contacted the attorney for United and asked him to have the checks endorsed and returned to him. United complied with Tarbox's request by endorsing the checks and returning them to him. Tarbox deposited the checks in the Trustee's bank account on March 30, 2011. At this point, to reiterate, United's claim, as evidenced by its proof of claim, had been paid in full.

After returning the checks, United filed and then withdrew a claim for $19,913.18, representing post-petition attorney's fees and interest. United then filed its motion here to withdraw the $14,618 for the purpose of paying its post-petition interest of $8,211.59 and attorney's fees of $11,701.59. At a hearing held on the matter on January 25, 2012, United admitted that it could credibly claim only the $14,391 in fees and interest. Given this, Tarbox does not dispute the amount or reasonableness of the fees.

## Discussion

United contends that its security interest encumbers the funds and that, under § 506(b), it is entitled to the funds to pay its post-petition interest, fees, and expenses. Section 506(b) does indeed allow a secured creditor to recover post-petition interest and reasonable fees and expenses if the value of its collateral exceeds its claim. *See* 11 U.S.C. § 506(b). This assumes the claim reflects the creditor's debt as of the petition date and that the debt instrument (note and/or security agreement) or state law allows recovery of fees and costs. The parties here do not dispute that United can, under its documents or Texas state law, charge fees and expenses or, as stated above, that United's fees and expenses are reasonable. United properly filed its application for

fees and interest with the Court. *See In re Jack Kline Co. Inc.*, 440 B.R. 712, 734 (Bankr. S.D. Tex. 2010) ("a creditor has an obligation to affirmatively request its post-petition interest by filing a § 506(b) application").

The initial question is whether United's security interest covers the USDA checks and thus the funds derived from the checks (and deposited in the estate's account). Under section 552 of the Bankruptcy Code, a creditor's pre-petition security interest in a debtor's property and its proceeds or products extends to proceeds or products acquired by the debtor post-filing. *See* 11 U.S.C. § 552(b)(1).

The Trustee claims that United is not entitled to the checks in the first place because the checks are not proceeds and the security agreement did not preserve United's interest in the checks as required by section 552. The Trustee's argument fails because a.) the checks are proceeds of Buchanan's USDA entitlement interest, and b.) the security agreement specifically preserves United's interest in the checks.

United had a property interest in the USDA entitlement program because the USDA program was initiated before the filing of the bankruptcy. *See Burgess v. Sikes*, 438 F.3d 493, 499 (5th Cir. 2006) (en banc). The Debtor also, therefore, had an interest in the proceeds from this interest, which included the relevant USDA checks. *See Bracewell v. Kelley (In re Bracewell)*, 322 B.R. 698, 709 (M.D. Ga. 2005) (interpreting and citing *Kelley v. Ring (In re Ring)*, 169 B.R. 73 (Bankr. M.D. Ga. 1993) (government disaster payment checks are proceeds of entitlement to these checks created by legislation)).

United retained a security interest in "all entitlements, rights to payment, and payments, in whatever form received [by Buchanan], including but not limited to, payments under any

governmental agricultural diversion programs, governmental agricultural assistance programs, . . . and any other such program of the United States Department of Agriculture." Exhibit A to Tarbox's Supplemental Brief [Docket No. 139].[1] The checks were proceeds encumbered by United's lien and secured by Buchanan's debt, including post-petition attorney's fees and interest.

      The Trustee argues that United did not meet its burden of proving that it *still* has a valid interest in the checks after blankly endorsing the checks and turning them over to the Trustee. *See In re Hot Shots Burgers & Fries, Inc.*, 169 B.R. 920, 929 (Bankr. E.D. Ark. 1994) (quoting *In re Grassridge Industries, Inc.*, 78 B.R. 978, 980 (Bankr. W.D. Mo. 1987) ("[T]he burden of proof as to the issue of whether the [creditor] Bank's lien reaches post petition property lies with the Bank.")). The Trustee is correct that, "[w]hen an instrument contains a blank endorsement, it becomes payable to the bearer and may be negotiated by transfer of possession alone." *Boston Investors Group, Inc. v. Three Arch Capital*, Case No. 01-08-00852-CV, 2011 WL 2089636, at *4 (Tex. App.—Houston [1st Dist.] May 19, 2011) (citing Tex. Bus. & Com. Code Ann. § 3.205(b) (West 2002)). There is a strong public policy reason for allowing the holder of a "blank" endorsed check, whether they be "agent, trustee, finder or thief," to be able to enjoy the rights of the check as its payee without encumbrance. *See Horvath v. Bank of N.Y., N.A.*, 641 F.3d 617, 621 (4th Cir. D. Va. 2011) (quoting *Whitworth v. Adams*, 26 Va. (5 Rand.) 333, 1827 WL 1200, at *45 (1827) (Cabell, J.)). This is because innocent third parties, bona fide purchasers, etc., should be encouraged to accept the validity of negotiable instruments and should not have to worry, while negotiating with the current holder, about the status of previous note holders. *See*

---

[1]This security agreement was not offered into evidence and is not specifically mentioned in the parties' incredibly scant stipulation. The Court construes it to have been admitted through the pleadings and counsel's announcement that essentially all factual matters and documents are undisputed.

*Bray v. Cadle Co.*, 880 S.W.2d 813, 817 (Tex. App.—Houston [14th Dist.] 1994) (citations omitted) ("The only notice sufficient to advise all interested parties of a perfected security interest in an instrument is actual possession by the secured party. To hold otherwise would permit a dishonest holder to assign the note to one party and then negotiate the note to a different party.").

After giving the checks to the Trustee, United ostensibly transferred all its rights to the Trustee. *See Boston Investors*, 2011 WL 2089636, at *4 ("Transfer of an instrument vests in the transferee the right to enforce the instrument, including any right as a holder in due course.") (citing Tex. Bus. & Com. Code Ann. § 3.203 (West 2002)). It was the estate's money at that point.

The problem with the Trustee's position, however, is that it fails to recognize the clear rights of a secured creditor vis-a-vis its borrower. The Trustee stands in the shoes of the borrower Buchanan. Apart from the factual question of whether United was paid off and is thus no longer a creditor, the Trustee knew United *was* a secured creditor and, as set forth above, that its security interest covered the USDA payments. The real issue is whether United, by endorsing the checks over to the Trustee, waived or released its security interest. On this point, the Court is satisfied that United, upon payment of its claim, which represented what it was owed as of the filing date of the bankruptcy, thought it was paid off. United's conduct then reflects that it subsequently realized that it was entitled to collect post-petition interest accrued and fees incurred. This epiphany resulted in the request presently before the Court. These facts present a bit of a quandary. Should the Court deny United *any* claim to the funds simply because United made its claim to the funds after endorsing the checks over to the Trustee?

The Trustee's letter of February 18, 2011, to O'Cheskey, the chapter 12 trustee, clearly reflects the Trustee's understanding that the USDA checks were property of the bankruptcy estate. His subsequent demand on United's counsel that United endorse and return the checks to him further underscores and confirms the Trustee's position. Then, United's compliance effectively ratified the Trustee's position. Tarbox has not disbursed the $14,618, though he could have rightly done so under the circumstances.[2] The basic point, however, is that the funds still exist in the bankruptcy estate's account and United has properly made demand for the funds to satisfy properly charged post-petition fees and interest. The Court is not inclined to effectively punish United and create a windfall for unsecured creditors simply because United was a bit late in coming to an understanding of its rights. By the same token, the Court is sympathetic to the Trustee and the efforts he made to preserve the funds for the estate when there was every indication that United was satisfied given payment of its claim.

Construing the facts and circumstances as a whole, the Court is satisfied that United did not effectively waive or release its lien. Well before United was paid, the checks were sent to and held by the chapter 12 trustee. United cooperated with both the chapter 12 trustee and, upon conversion, the chapter 7 trustee. The Court does not construe United's conduct as an explicit waiver or release of its right to charge its properly accrued interest and fees against its remaining collateral; it infers that United always intended that its debt be paid. *See First Valley Bank of Los Fresnos v. Martin*, 144 S.W.3d 466, 471 (Tex. 2004); *see also Fisher v. First Nat'l Bank of Memphis*, 584 S.W.2d 515, 519 (Tex. Civ. App.—Amarillo 1979) ("In the absence of an express renunciation a waiver will not be presumed or implied contrary to the intention of the party whose

---

[2]The Court is here simply referring to the Trustee's disbursement of the funds as unencumbered funds to creditors of the estate in accordance with the provisions of the Bankruptcy Code.

rights would be injuriously affected thereby, unless by his conduct the opposite party has been misled to his prejudice into the honest belief that such waiver was intended or consented to.") (citations omitted).

The Court concludes that United's interest in the funds was not extinguished by its conduct—its security interest survives—but such interest is made subject to the Trustee's commission and fees incurred by the Trustee for his services as attorney for the estate. *See id*. The Court recognizes that the parties may not dispute the Trustee's right to charge his commission against the funds. As for the Trustee's attorney's fees, such fees must be incurred in connection with the Trustee's efforts to recover the funds for the estate's benefit. Such efforts are integrally related to the Trustee's administration of the estate and its assets. The Court will entertain an agreed order submitted by the parties that reflects an agreement concerning the Trustee's fees. If the parties cannot reach an agreement on the Trustee's fees, the Court will determine the reasonableness and the amount of the Trustee's fees upon proper application made by the Trustee. It is, therefore,

ORDERED that United is entitled to recover the proceeds of $14,618, less the Trustee's commission charged against such sum and reasonable fees incurred by the bankruptcy estate for Tarbox's services as attorney for the estate in connection with his administration of the funds.

### End of Memorandum Opinion and Order ###